UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| LOUIS MASSAAD,<br><br>Plaintiff,<br><br>vs.<br><br>CVS RX SERVICES, INC., et al.,<br><br>Defendants. | : | CASE NO. 1:17-cv-01064-JG<br><br><br><br>OPINION & ORDER<br>[Resolving Doc. 8] |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Louis Massaad filed this lawsuit against his former employers, CVS RX Services, Inc., Caremark PHC, LLC, and Ohio CVS Stores, LLC (collectively "CVS"), alleging that CVS violated the Family and Medical Leave Act, Americans with Disabilities Act, Age Discrimination in Employment Act, and several Ohio laws when it fired him.[1]

CVS moves to dismiss the complaint and compel arbitration based on its corporate arbitration policy.[2] Massaad opposes that motion. He argues that he opted out of the policy and that, even if he hadn't, he was not sufficiently notified of the policy and the policy is unconscionable.[3]

For the reasons that follow, the Court **DENIES** CVS's motion to dismiss Massaad's complaint and CVS's motion to compel arbitration.

## I. BACKGROUND

In October 2014, CVS introduced an Arbitration Policy to bind its employees to arbitrate the vast majority of their legal claims against CVS instead of pursuing those claims in state or

[1] Doc. 1.
[2] Doc. 8.
[3] Doc. 19.

federal courts.[4] The policy states:

> **1. <u>Mutual Obligation to Arbitrate.</u>** Under this Policy, CVS Health (including its subsidiaries) and its Employees agree that any dispute between an Employee and CVS Health that is covered by this Policy ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided by this Policy. This Policy is an agreement to arbitrate disputes covered by the Federal Arbitration Act (9 U.S.C. §§ 1-16). Employees accept this Policy by continuing their employment after becoming aware of the Policy.
>
> **<u>2. Claims Covered by This Policy.</u>** Except as otherwise stated in this Policy, Covered Claims are any and all legal claims, disputes or controversies that CVS Health may have, now or in the future, against an Employee or that an Employee may have, now or in the future, against CVS Health, its parents, subsidiaries, successors or affiliates, or one of its employees or agents, arising out of or related to the Employee's employment with CVS Health or the termination of the Employee's employment.
>
> Covered Claims include but are not limited to disputes regarding wages and other forms of compensation, hours of work, meal and rest break periods, seating, expense reimbursement, leaves of absence, harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act ("ERISA") (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by ERISA or funded by insurance), Genetic Information Non-Discrimination Act, and other federal, state and local statutes, regulations and other legal authorities relating to employment.
>
> Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Policy, except as provided in the section below regarding the Class Action Waiver.[5]

CVS set out to inform its employees of this policy, and thus bind them to it if they chose to remain employees, by having employees complete a virtual training course through "a Learning Management Training System known as 'Lear Net.'"[6]

The virtual training course consisted of a slide show presentation that provided employees

[4] *See* Doc. 8-4 at 10–13; Doc. 21-2 at ¶ 3.
[5] Doc. 8-4 at 10–11.
[6] *See* Doc. 8-1 at ¶¶ 5, 8–12; Doc. 8-4 at 10.

with some basic information about the arbitration policy and contained a link to a "Colleague Guide to Arbitration."[7] The Guide contained a copy of the policy and explained it in greater depth than the slide show presentation.[8]

Although the policy itself makes no mention of allowing employees to opt out of its terms,[9] both the slide show presentation and the Guide state that employees can opt out of the policy within 30 days of becoming aware that it exists.[10] At the conclusion of the Lear Net training, employees were required to sign an acknowledgment that, among other things, stated:

> By clicking the "Yes" button below, I am acknowledging:
>
> - That I have carefully read the CVS Health Policy, "Arbitration of Workplace Legal Disputes" (the "Policy") and understand that it applies to me; . . .
> - that I have the opportunity, for a limited time only, to opt out of the Policy and, by doing so, not be bound by its terms;
> - that, to opt out, I must mail a written, signed and dated letter, stating clearly that I wish to opt out of this Policy to CVS Health, P.O. Box 969, Woonsocket, RI 02895, which must be postmarked no later than 30 days after the date I first received or viewed a copy of this Policy;
> - that by being covered by the Policy and not opting out, CVS and I are obligated to go to arbitration instead of court to resolve legal claims covered by the Policy; . . .
> - that my click of the "Yes" button creates an electronic signature that is legally binding.[11]

It is not possible to complete the training without clicking the "Yes" button.[12]

According to CVS's records, Plaintiff Massaad completed the Lear Net training on arbitration—and therefore signed the acknowledgement quoted above—on November 5, 2014.[13]

---

[7] Doc. 8-1 at ¶¶ 8–14; Doc. 8-3; Doc. 8-4

[8] Doc. 8-4

[9] *See generally id.* at 10–13.

[10] Doc. 8-3 at 19 ("By clicking the "Yes" button below, I am acknowledging and agreeing . . . that I have the opportunity, for a limited time only, to opt out of the Policy and, by doing so, not be bound by its terms [and] that, to opt out, I must mail a written, signed and dated letter, stating clearly that I wish to opt out of this Policy to CVS Health, P.O. Box 969, Woonsocket, RI 02895, which must be postmarked no later than 30 days after the date I first received or viewed a copy of this Policy[.]"); Doc. 8-4 at 8 ("[F]rom the time that a colleague first views or receives the policy, he or she has thirty days to opt out of the policy.").

[11] Doc. 8-3 at 20.

[12] Doc. 8-1 at ¶ 11.

[13] Doc. 8-5 at 5. Massaad states in a sworn declaration that he did not sign the acknowledgement, and as a result did not finish the training program, the first time he viewed the LearNet presentation. Doc. 19-1 at ¶ 10. He

CVS claims that it has never received Massaad's opt-out letter.[14] A CVS employee submitted a declaration stating under oath that she searched through both (1) the electronic system CVS uses to track the opt-out requests it receives and (2) the file of opt-out forms CVS has received but has been unable to match to any employee's file.[15] She did not locate any opt-out request from Massaad.[16]

Massaad, on the other hand, has submitted a sworn declaration stating that he mailed an opt-out request to CVS on October 27, 2014 (around 22 days after CVS introduced the arbitration policy).[17] He has attached to that declaration a copy of what he alleges are the notes he took while viewing the Lear Net program on how to opt out and the opt-out letter he sent to CVS.[18]

CVS terminated Massaad's employment in August 2015.[19] He then filed this lawsuit against CVS and CVS moved to dismiss and compel arbitration.[20]

## II. LEGAL STANDARD

When addressing a motion to compel arbitration under the Federal Arbitration Act, courts should consider: (1) "whether the parties agreed to arbitrate," (2) "the scope of that agreement," (3) whether, if federal claims are asserted, "Congress intended those claims to be nonarbitrable;" and (4) if only some of the claims asserted in the complaint are subject to arbitration, "whether to

explained that he did not think it was necessary because he was opting out. *Id.* Massaad does not recall ever returning to the program to complete the form, but does recall that CVS informed him that it wanted him to complete the program (i.e. sign the acknowledgment) even if he opted out. *Id.* at ¶¶ 10–11. He also says that "[i]t was common practice for managers to login on behalf of employees and complete training acknowledgments if they were unavailable or absent before the deadline." *Id.* at ¶ 11. He does not remember if that happened in this case, though. *Id.* In any event, whether Massaad actually completed the acknowledgment does not affect the Court's disposition of CVS' motion.

[14] Doc 8 at 6; Doc. 8-1 at ¶16; Doc. 21-2.

[15] Doc. 21-2 at ¶¶ 3–5.

[16] *Id.*

[17] Doc. 8-1 at ¶ 6; Doc. 19-1 at ¶ 9.

[18] *Id.* at 3–4.

[19] Doc. 1 at ¶ 13; Doc. 9 at ¶ 13.

[20] Doc. 1; Doc. 8.

stay the remainder of the proceedings pending arbitration."[21]

The FAA "establishes 'a liberal federal policy favoring arbitration agreements.'"[22] As a result, when interpreting an arbitration agreement, "any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[23]

That said "[a]rbitration under the [FAA] is a matter of consent, not coercion."[24] Even the strong federal policy favoring arbitration cannot change the fact that, at its core, "arbitration is a matter of contract between the parties, and [a person] cannot be required to submit to arbitration of a dispute which [he] has not agreed to submit to arbitration."[25]

A party opposing a motion to compel arbitration must show that there is a genuine dispute of material fact as to whether there is a valid agreement to arbitrate between the parties.[26] Because this standard mirrors the summary judgment standard, the Court views all of the facts and draws all inferences in favor of the party opposing arbitration,[27] except that any doubts as to the *interpretation* of the agreement must be resolved in favor of arbitration.[28] The question is "whether the evidence presented is such that a reasonable trier of fact could conclude that no valid agreement to arbitrate exists."[29]

---

[21] *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

[22] *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97–98 (2012) (quoting *Moses H Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The Court recognizes that a number of Massaad's claims are state law claims, Doc. 1 at ¶¶ 24, 29, 34, 37–40, but the FAA applies to state law claims and preempts state laws governing arbitration, *see Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 344–45 (6th Cir. 2006). Parties opposing arbitration can, however, still assert general contract defenses. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

[23] *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007) (quoting *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004)) (internal quotation marks omitted).

[24] *Volt Info. Sci., Inc. v. Bd. Of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

[25] *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005).

[26] *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

[27] *Id.* at 888–89.

[28] *Bollman*, 505 F.3d at 504.

[29] *Simons*, 288 F.3d at 889.

## III. DISCUSSION

### A. Opt-Out

Plaintiff Massaad first contends that his declaration and the documents supporting that declaration are sufficient to create a genuine dispute of material fact as to whether he opted-out of the arbitration policy.[30] Responding, CVS contends that they do not create a genuine dispute of material fact because Massaad has not demonstrated that his opt out request "was properly addressed, bore sufficient postage, and was actually deposited in the mail."[31] CVS supports this position by giving evidence that it has no record of receiving the opt-out request.

As CVS correctly points out, the parties have purportedly agreed to arbitrate not only the merits of any claims they might have against each other but also any disputes about the scope and validity of the arbitration agreement itself.[32] Such agreements to arbitrate about whether one has to arbitrate (sometimes called "delegation provisions") are enforceable, but both parties must consent to them—just as they would have to consent to any other arbitration agreement.[33] In this case, Massaad contends that he opted out of the policy as a whole, including the agreement to arbitrate about arbitrating.[34] So we must consider whether that antecedent agreement was ever made.[35]

"Because arbitration agreements are fundamentally contracts, we review the enforceability

[30] Doc. 19 at 7–8. CVS does not dispute that an employee can opt out of the policy notwithstanding the fact that the policy itself makes no mention of opting out. *See generally* Doc. 8; Doc. 21.

[31] Doc. 21 at 5.

[32] Doc. 8 at 8; Doc. 8-4 at 10–11.

[33] *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010) ("An agreement to arbitrate a gateway issue [such as whether the parties have agreed to arbitrate] is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

[34] *See* Doc. 19 at 7–8.

[35] *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) ("[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it." (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967)).

of an arbitration agreement according to the applicable state law of contract formation."[36] In this case, both parties concede that means looking to Ohio law.[37] In Ohio, a party seeking to prove that a contract existed must show that the parties mutually assented to the contract (usually by showing an offer and acceptance) and that each party gave consideration for it.[38]

Submitting an opt-out form is a means of rejecting an offer to contract.[39] So it follows that an employee's opt-out letter ordinarily would not be effective until CVS received it.[40] In this case, however, the terms of the offer provide that an opt-out becomes effective when it is mailed.[41] The offer says nothing about whether CVS receives that letter. As a result, CVS's discussion of cases discussing whether a party is entitled to a presumption that a letter is received misses the mark.

CVS argues that Plaintiff Massaad has not created a genuine dispute of material fact as to whether he mailed his opt-out letter, because his declaration only states that he mailed it to the address listed in the policy.[42] It does not state that the letter was properly addressed, bore sufficient postage, and was actually deposited in the mail.[43]

CVS's argument on that point is weak, to say the least. The ordinary meaning of the verb "mail" is "[t]o deposit (a letter, package, etc.) with the U.S. Postal Service" and "to ensure that a

---

[36] *Hergenreder v. Bickford Senior Living Group*, 656 F.3d 411, 416 (6th Cir. 2011) (quoting *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)).

[37] Doc. 8 at 9; Doc. 19 at 6–7.

[38] *Nilavar v. Osborn*, 711 N.E.2d 726, 732 (Ohio Ct. App. 1998).

[39] *See Tillman v. Macy's, Inc.*, 735 F.3d 453, 459 (6th Cir. 2013).

[40] *See* Restatement (Second) of Contracts § 40 (1981) ("Rejection or counter-offer by mail or telegram does not terminate the power of acceptance until received by the offeror . . . ."). Indeed, unlike the Restatement, Ohio law requires that offers as well as rejections be received before they become effective. *Compare* 17 Ohio Jur. 3d § 27 *with* Restatement (Second) of Contracts § 63(a).

[41] Doc. 8-3 at 20 ([T]o opt out, I must mail a written, signed and dated letter . . . ."); Doc. 8-4 at 8 ("In order to opt out, a colleague must mailo a written, signed and dated letter . . . ."). After all, the means of accepting an offer are generally controlled by the terms of the offer regardless of the usual method of acceptance. Restatement (Second) of Contracts § 50 cmt. a ("The acceptance must manifest assent to the same bargain proposed by the offer, and must also comply with the terms of the offer as tot eh identity of the offeree and the mode of manifesting acceptance. Offers commonly invite acceptance in any reasonable manner, but a particular mode of acceptance may be required."). CVS has chosen to make remaining a CVS employee without *mailing* an opt-out letter the means of accepting its offer to enter an arbitration agreement.

[42] Doc. 21 at 5.

[43] *See* Doc. 19-1 at ¶ 9.

letter, package, etc. is properly addressed, stamped, and placed into a receptacle for mail pickup."[44] As a result, Massaad's sworn statement that he mailed his opt-out letter to CVS is sufficient to create a genuine dispute of material fact as to whether he mailed that letter. While another judge of this court has concluded otherwise, this Court disagrees with his analysis.[45]

CVS has submitted evidence suggesting that it never received Massaad's opt-out letter.[46] That evidence might allow a jury to infer that Massaad never mailed a letter to CVS or failed to properly address it or attach the proper postage.

But the jury would not be required to draw that inference. It could disbelieve CVS's witnesses' testimony that the letter was never received. It could also believe both Massaad and CVS and simply conclude that the letter went astray somewhere between Massaad's mailbox and CVS's.

At this stage of the proceedings the Court is required to draw all reasonable inferences in Massaad's favor.[47] And that means inferring that he mailed his opt-out letter and, as a result, did opt-out of the arbitration policy.

**B. Notice & Unconscionability**

Massaad also contends that CVS's motion should be denied because he did not have

---

[44] *Mail*, Black's Law Dictionary (10th ed. 2014). Similarly, other dictionaries explain that to "mail" something means to send it using a postal service. *Mail*, Am. Heritage Dictionary of the Eng. Lang. (5th ed. 2016); *Mail*, New Oxford Am. Dictionary (3d ed. 2010). As anyone who has ever attempted to use a postal service knows, sending something to someone via the mail requires employing the proper address and amount of postage.

[45] *Grynko v. Sears Roebuck & Co.*, No. 1:13-cv-2482, 2014 WL 66495, at *5 (N.D. Ohio 2014). CVS argues that we are bound by *Grynko* under "the intra-court comity doctrine," which it claims states that district courts are bound by prior decisions of their judges until overruled by the appropriate Circuit Court of Appeals or the Supreme Court. Doc. 21 at 6. Not only has the Court been unable to find any decisions of this Court adopting that rule, but the Supreme Court has emphatically rejected it. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."(quoting 18 James W. Moore et al., *Moore's Fed. Practice* § 134.02(1)(D) (3d ed. 2011)). It is also worth noting that the arbitration agreement in *Grynko* required that the opt-out form be "returned," which suggests that receipt was required. *Grynko*, 2014 WL 66495 at * 2. The opt-out option in this case requires only that an employee's opt-out letter be "mailed." Doc. 8-3 at 20; Doc. 8-4 at 8.

[46] Doc. 21-2 at ¶¶ 3–5.

[47] Great Earth Cos., 288 F.3d at 888–89.

adequate notice of the terms of the arbitration agreement and the agreement is unconscionable.[48] As we discussed above, however, the Policy contains a delegation provision providing that the parties will arbitrate such disputes about whether to arbitrate.[49] Massaad's notice and unconscionability arguments are directed at the Policy as a whole, including the delegation provision.[50] He does not specifically challenge the delegation provision.[51] As a result, if the parties actually entered an arbitration agreement, Massaad must pursue his unconscionability and lack of notice arguments through arbitration.[52] Because Massaad's declaration creates a genuine issue of material fact as to whether the parties ever entered an arbitration agreement, however, CVS's motion must be denied.

## IV. CONCLUSION

For all of those reasons, the Court **DENIES** CVS's motion to dismiss Plaintiff Massaad's complaint and compel arbitration.

IT IS SO ORDERED.

Dated: September 26, 2017

*s/ James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE

---

[48] Doc 19 at 8–12.
[49] *Supra* at 6.
[50] *See* Doc. 19 at 8–12.
[51] *See id.*
[52] *Rent-A-Center*, 561 U.S. at 70–76.